**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PAUL DOAKS,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | **Case No.:** |
| : | |
| **HERSHEY CREAMERY COMPANY,** : | |
| : | |
| **Defendant.** : | **COMPLAINT IN CIVIL ACTION** |
| : | |
| : | |

Filed on Behalf of Plaintiff:
Paul Doaks

Counsel of Record for this Party:

**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC.
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:   (412) 545-3015
Fax No.:       (412) 540-3399
E-mail:         jward@jpward.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL DOAKS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Case No.: |
| | : |
| HERSHEY CREAMERY COMPANY, | : |
| | : |
| Defendant. | : |
| | : |
| | : |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes Plaintiff, Paul Doaks, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and, specifically, Joshua P. Ward, Esquire, and Travis A. Gordon, Esq., who files the within Complaint in Civil Action against Defendant, Hershey Creamery Company, of which the following is a statement:

**PARTIES**

1. Plaintiff, Paul Doaks (hereinafter "Mr. Doaks"), is an adult individual who currently resides at 2324 North 6th Street Harrisburg, Pennsylvania 17110.

2. Defendant, Hershey Creamery Company, (hereinafter "Hershey"), is a corporation with a place of business located at 301 S Cameron St, Harrisburg, Pennsylvania 17101.

**NATURE OF THE ACTION**

3. This action arises under the Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12101, *et seq.*, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act (hereinafter, the "PHRA"), 43

1

Pa. Cons. Stat. § 951, *et seq*., and Section 1981 of the Civil Rights Act of 1866 (hereinafter "Section 1981") 42 U.S.C. § 1981.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over Mr. Doaks's discrimination claims pursuant to 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

6. Mr. Doaks is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Central Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Middle District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

7. Mr. Doaks filed a timely charge with the Equal Employment Opportunity Commission (hereinafter "EEOC") regarding his allegations within the purview of the Pennsylvania Human Relations Act and Title VII of the 1964 Civil Rights Act on or about May 17, 2021, under case number 533-2021-01349. On January 14, 2022, Mr. Doaks was issued a Notice of Suit Rights. A copy of the Notice is attached hereto, made a part thereof, and referenced as "Exhibit A."

### PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

8. Mr. Doaks began his employment with Hershey on February 24, 2020.

9. Mr. Doaks was a factory worker whose duties included supervising various departments, loading, unloading, and watching the line.

10. Mr. Doaks is an African American man who was highly qualified for this position.

11. On or about July of 2020, a coworker of Mr. Doaks, who is also African American, informed Mr. Doaks that he believed the supervisors at Hershey regularly discriminated against African American employees.

12. The aforementioned coworker openly voiced concerns over the racial discrimination to his coworkers in the break room at Hershey and was promptly asked by management to leave the premises because of this.

13. The management who asked this employee to leave the premises consisted of exclusively Caucasian individuals.

14. Furthermore, Mr. Doaks was regularly disparately treated by Employer because of his African American race.

15. Employer readily exhibited preferential treatment toward Caucasian employees.

16. Notably, Caucasian employees were allowed more frequent breaks during the workday while the African American employees were not.

17. Furthermore, African American employees were not permitted to utilize paid time off (hereinafter "PTO") during certain weeks because Employer stated they were "too busy," yet management allowed Caucasian employees to utilize their paid time off during those same "prohibited" weeks.

18. On or about August 25, 2020, Mr. Doaks dislocated his shoulder and sought medical attention.

19. Mr. Doak's physician sent him home from the emergency room with a note which stated that Mr. Doaks could return to work with some restrictions.

20. These restrictions included that Mr. Doaks could not lift over ten pounds.

21. On the same date, Mr. Doaks immediately called "Phil", (hereinafter, "Mr. Phil"), the General Manager, notified him of his shoulder dislocation, and requested a reasonable accommodation in the form of light-duty work.

22. Mr. Phil informed Mr. Doaks that he must call his supervisor, "Kenny", (hereinafter, "Mr. Kenny") to inform him of this. Mr. Doaks subsequently called Mr. Kenny and informed him that he was in need of reasonable accommodations in the form of light duty work due to his shoulder dislocation.

23. Mr. Kenny promptly informed Mr. Doaks that he would not be accommodated and that he was not allowed to be put on light duty restrictions for his disability.

24. Upon information and belief, there were numerous workplace duties which Mr. Doaks was capable of completing, even in an accommodated fashion.

25. These workplace duties include working on a different line, checking packaging, or any duty that did not require lifting items.

26. Even so, Mr. Kenny informed Mr. Doaks that he could not return to work until he could perform at full duty with no restrictions and refused to let Mr. Doaks return to the premises.

27. Additionally, Mr. Doaks knew Caucasian coworkers who were permitted to work with light-duty restrictions and received accommodations.

28. On or about September 15, 2020, Mr. Doaks received a phone call from his colleague, "Mike", (hereinafter, "Mr. Mike"), informing Mr. Doaks that he overheard management at Employer state that Mr. Doaks's position was terminated.

29. Mr. Doaks had never received a termination notice and per Employer's orders, was on medical leave until he could return at full duty with no restrictions.

30. Mr. Doaks was perplexed by the information he had received from Mr. Mike, and immediately called his supervisor, Mr. Kenny, to clarify this.

31. Mr. Kenny stated that Mr. Doaks' position was terminated and that he should call Mr. Phil for further details.

32. Mr. Doaks called Mr. Phil at this time. Mr. Phil stated that he was under the impression that Mr. Doaks had voluntarily quit and that he was unaware Mr. Doaks was on medical leave at the time.

33. This was patently false as Mr. Doaks had called and informed Mr. Phil of his injury personally and of his corresponding need for accommodations.

34. Instead of engaging in the accommodations interactive process, Employer told Mr. Doaks he was not allowed to return to the premises until he could return to full duty with no restrictions, and then after less than one month, terminated his employment while he was on medical leave.

35. This termination was carried out prior to Mr. Doaks' final doctor's appointment to be cleared for full duty.

## COUNT I

### RACIAL DISCRIMINATION / WRONGFUL TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

36. Mr. Doaks incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

37. Under Title VII, it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1).

38.     When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck & Co.*, 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 36 L. E.D. 29 668 (1973). See also *Makky v. Chertoff*, 542 F.3d 205, 214 (3d Cir. 2008).

39.     Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004)).

40.     The same legal standards apply to Title VII and PHRA claims. *Connelly v. LaneConstr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 (3d Cir. 2000)). Further, the same standards apply to claims under Title VII and the PHRA on a summary judgment motion. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). Accordingly, the Court's analysis of the Title VII claims also applies to the PHRA claims. *Phillips v. SEPTA*, CIVIL ACTION NO. 16-0986, 6-7 (E.D. Pa. Feb. 12, 2018).

41.     Under Title VII, for other employees to be considered "similarly situated," they must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it," *Morales v. PNC Bank, N.A.*, 2012 U.S. Dist. LEXIS 143605 *23 (E.D. Pa. 2012).

42. Pennsylvania courts have held that comparison factors for "similarly situated employees" have included "dealing with the same supervisor, having been subject to the same standards, and engaging in the same conduct without differentiating and mitigating circumstances." *Id*.

43. A plaintiff may also satisfy the fourth element by "showing other circumstances that give rise to an inference of unlawful discrimination." *Senador v. Zober Indus*., 2009 U.S. Dist. LEXIS 36059 *9 (E.D. Pa. 2009).

44. As an African American, Mr. Doaks is a member of a protected class under Title VII.

45. Mr. Doaks was highly qualified for the position of factory worker at Hershey and never received any negative or less than satisfactory reviews during his employment.

46. Mr. Doaks was regularly disparately treated by Hershey because of his African American race.

47. Employer readily exhibited preferential treatment toward similarly situated Caucasian employees.

48. Caucasian employees were allowed more frequent breaks during the workday while the African American employees were not.

49. Furthermore, African American employees were not permitted to utilize paid time off during certain weeks because Hershey stated they were "too busy," yet management allowed Caucasian employees to utilize their paid time off during those same "prohibited" weeks.

50. On or about August 25, 2020, Mr. Doaks's suffered a dislocated shoulder, of which he notified his General Manager, Mr. Phil, and supervisor, Mr. Kenny, and was directed by his physician to return to work with light duty work restrictions.

51. Mr. Kenny informed Mr. Doaks that he would not be allowed to return to work until he could perform at full duty with no restrictions, despite Mr. Doaks's Caucasian coworkers being permitted to work with light duty accommodations for their injuries.

52. The aforementioned conduct constitutes adverse employment actions taken by Hershey against Mr. Doaks.

53. As a direct and proximate result of the aforementioned conduct, Mr. Doaks suffered actual damages, including, but not limited to, lost wages, emotional distress all in the past present and future.

54. As set forth hereinabove, Hershey's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including, back pay, reinstatement, front pay, compensatory damages, punitive damages, costs and attorney fees, in addition to such other relief as deemed just and proper.

## COUNT II

### RACIAL DISCRIMINATION / WRONGFUL TERMINATION IN VIOLATION OF SECTION 1981

55. Mr. Doaks incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

56. 42 U.S.C. § 1981(a) provides that:

> "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws …as is enjoyed by white citizens."

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (holding that Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."); see also, *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 140 S. Ct. 1009, 1010 (2020).

57. Thus, Section 1981 prohibits employers from engaging in intentional racial discrimination.

58. Mr. Doaks was highly qualified for the position of factory worker at Hershey and never received any negative or less than satisfactory reviews during his employment.

59. Mr. Doaks was regularly disparately treated by Hershey because of his African American race.

60. Employer readily exhibited preferential treatment toward similarly situated Caucasian employees.

61. Caucasian employees were allowed more frequent breaks during the workday while the African American employees were not.

62. Furthermore, African American employees were not permitted to utilize paid time off during certain weeks because Hershey stated they were "too busy," yet management allowed Caucasian employees to utilize their paid time off during those same "prohibited" weeks.

63. On or about August 25, 2020, Mr. Doaks's suffered a dislocated shoulder, of which he notified his General Manager, Mr. Phil, and supervisor, Mr. Kenny, and was directed by his physician to return to work with light duty work restrictions.

64. Mr. Kenny informed Mr. Doaks that he would not be allowed to return to work until he could perform at full duty with no restrictions, despite Mr. Doaks's Caucasian coworkers being permitted to work with light duty accommodations for their injuries.

65. The aforementioned conduct constitutes adverse employment actions taken by Hershey against Mr. Doaks.

66. As a direct and proximate result of the aforementioned conduct, Mr. Doaks suffered actual damages, including, but not limited to, lost wages, emotional distress all in the past present and future.

67. As set forth hereinabove, Hershey's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including, back pay, reinstatement, front pay, compensatory damages, punitive damages, costs and attorney fees, in addition to such other relief as deemed just and proper.

### COUNT III

### DISCRIMINATION/ WRONGFUL TERMIANTION IN VIOLATION OF THE ADA AND PHRA

68. Mr. Doaks incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

69. The inquiry into whether a person is disabled under the ADA is made on a case-by case analysis. *Tice v. Centre Area Transport Authority*, 247 F.3d 506 (3rd Cir. 2001). To establish a prima facie case of discrimination under the ADA, Plaintiff must show: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations by the employer; and (3) he suffered an otherwise adverse employment decision as a result of discrimination. See *McGlone v.*

*Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at *2 (3d Cir. May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

70. The PHRA is modeled similarly to the ADA and shares similar burdens. The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. *Bialko v. Quaker Oats Co.*, 434 F. App'x. 139, 142 n.5 (3rd Cir. 2011) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (noting that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted "in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's] ADA claim applie[d] with equal force to his PHRA claim."

71. Mr. Doaks is disabled within the meaning of the ADA and the PHRA.

72. Mr. Doaks was highly qualified for the position of factory worker at Hershey and never received any negative or less than satisfactory reviews during his employment.

73. On or about August 25, 2020, Mr. Doaks's suffered a dislocated shoulder, of which he notified his General Manager, Mr. Phil, and supervisor, Mr. Kenny, and was directed by his physician to return to work with light duty work restrictions.

74. Mr. Kenny informed Mr. Doaks that he would not be allowed to return to work until he could perform at full duty with no restrictions.

75. On or about September 15, 2020, Mr. Doaks was informed by Mr. Mike that he had overheard management saying that Mr. Doaks's had been terminated.

76. Perplexed by this information, Mr. Doaks called Mr. Kenny, who informed him that he was terminated and should call Mr. Phil for clarification.

77. Mr. Phil told Mr. Doaks that he was under the impression that Mr. Doaks had voluntarily quit and was unaware he was on medical leave at the time.

78. This was patently false as Mr. Doaks had called and informed Mr. Phil of his injury personally and of his corresponding need for accommodations. Instead of engaging in the accommodations interactive process, Mr. Kenny told Mr. Doaks he was not allowed to return to the premises until he could return to full duty with no restrictions, and then after less than one month, terminated his employment while he was on medical leave.

79. This termination was carried out prior to Mr. Doaks's final doctor's appointment to be cleared for full duty.

80. Mr. Doaks suffered an adverse employment decision in the form of the termination of his employment as a result of Hershey's discrimination specifically related to Mr. Doaks's disability.

81. As a direct and proximate cause of the aforementioned conduct, Mr. Doaks suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

82. As set forth hereinabove, Hershey's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including, back pay, reinstatement, front pay, compensatory damages, punitive damages, costs and attorney fees, in addition to such other relief as deemed just and proper.

## COUNT IV

### FAILURE TO ACCOMMODATE IN
### VIOLATION OF THE ADA AND THE PHRA

83. Mr. Doaks incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

84. To prevail on a claim of failure to accommodate, Plaintiff must establish that "(1) the employer knew about his disability; (2) he requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist him in seeking accommodations; and (4) he could have been reasonably accommodated but for the employer's lack of good faith." *Tourtellotte v. Eli Lily & Co.*, 636 F.App'x 831, 849 (3d Cir. 2016) (internal citations omitted).

85. Mr. Doaks made Hershey aware of his condition at the time he received the note from his physician and therefore Hershey possessed knowledge of Mr. Doaks's disability.

86. Mr. Doaks requested reasonable accommodations in the form of being allowed to complete his workplace duties while temporarily not lifting over ten pounds.

87. In lieu of making reasonable accommodations for Mr. Doak's disability, Hershey terminated his employment.

88. Therefore, Hershey failed to make a good faith effort to assist Mr. Doaks in seeking reasonable accommodations.

89. Hershey refused to offer any further assistance in the accommodations process.

90. Mr. Doaks could have been readily and reasonably accommodated by Hershey during his light duty requirements, however, Hershey failed to provide even a modicum of good faith or a willingness to engage in the accommodations process.

91. Upon information and belief, Hershey had other employees who were accommodated for light duty restrictions.

92. As a direct and proximate cause of the aforementioned conduct, Mr. Doaks suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

93. As set forth hereinabove, Hershey's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including, back pay, reinstatement, front pay, compensatory damages, punitive damages, costs and attorney fees, in addition to such other relief as deemed just and proper.

**JURY TRIAL DEMANDED.**

                                                  Respectfully submitted,

                                                  **J.P. WARD & ASSOCIATES, LLC,**

Date: April 14, 2022                        By:  */s/ Joshua P. Ward*
                                                     Joshua P. Ward (Pa. I.D. No. 320347)
                                                     Travis A. Gordon (Pa. I.D. No. 328314)

                                                     J.P. Ward & Associates, LLC
                                                     The Rubicon Building
                                                     201 South Highland Avenue
                                                     Suite 201
                                                     Pittsburgh, PA 15206

                                                     Counsel for Plaintiff

# Exhibit A

EEOC Form 161 (11/2020)  **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Paul Doaks<br>2324 North Sixth Street<br>Harrisburg, PA 17110 | From: | Pittsburgh Area Office<br>1000 Liberty Avenue<br>Room 1112<br>Pittsburgh, PA 15222 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 533-2021-01349 | Philadelphia Legal Unit,<br>Legal Technician | (267) 589-9700 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature: Deborah Kane]*   January 14, 2022

**Deborah A. Kane,**
**Director**   *(Date Issued)*

Enclosures(s)

cc:
Charles Shambaugh
Assistant Treasurer
HERSHEY CREAMERY COMPANY
301 S CAMERON ST
P O BOX 1821
Harrisburg, PA 17101

Joshua P. Ward
J.P. WARD & ASSOCIATES LLC
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS**   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION**   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do *not* relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.