**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PAUL DOAKS,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | : Case No.: 1:22-cv-00551-SHR |
| | : |
| **HERSHEY CREAMERY COMPANY,** | : |
| | : |
| **Defendant.** | : **FIRST AMENDED COMPLAINT IN** |
| | : **CIVIL ACTION** |
| | : |

Filed on Behalf of Plaintiff:
Paul Doaks

Counsel of Record for this Party:

**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

Travis A. Gordon
Pa. I.D. No. 328314

J.P. Ward & Associates, LLC.
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:    (412) 545-3015
Fax No.:       (412) 540-3399
E-mail:         jward@jpward.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL DOAKS, | : |
| Plaintiff, | : |
| v. | : Case No.: 1:22-cv-00551-SHR |
| HERSHEY CREAMERY COMPANY, | : |
| Defendant. | : |

## FIRST AMENDED COMPLAINT

AND NOW, comes Plaintiff, Paul Doaks, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and, specifically, Joshua P. Ward, Esquire, and Travis A. Gordon, Esq., who files the within First Amended Complaint in Civil Action against Defendant, Hershey Creamery Company, of which the following is a statement:

## PARTIES

1.  Plaintiff, Paul Doaks (hereinafter "Mr. Doaks"), is an adult individual who currently resides at 2324 North 6th Street Harrisburg, Pennsylvania 17110.

2.  Defendant, Hershey Creamery Company, (hereinafter "Hershey"), is a corporation with a place of business located at 301 S Cameron St, Harrisburg, Pennsylvania 17101.

## NATURE OF THE ACTION

3.  This action arises under the Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), 42 U.S.C. § 2000e *et seq.*, Americans with Disabilities Act (hereinafter "ADA"), 42

1

U.S.C. § 12101, *et seq.*, and Section 1981 of the Civil Rights Act of 1866 (hereinafter "Section 1981") 42 U.S.C. § 1981.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Mr. Doaks's discrimination claims pursuant to 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

6. Mr. Doaks is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Central Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Middle District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

7. Mr. Doaks began his employment with Hershey on February 24, 2020.

8. Mr. Doaks was a factory worker whose duties included supervising various departments, loading, unloading, and watching the line.

9. Mr. Doaks is an African American man who was highly qualified for this position.

10. On or about July of 2020, a coworker of Mr. Doaks, who is also African American, informed Mr. Doaks that he believed the supervisors at Hershey regularly discriminated against African American employees.

11. The aforementioned coworker openly voiced concerns over the racial discrimination to his coworkers in the break room at Hershey and was promptly asked by management to leave the premises because of this.

12. The management who asked this employee to leave the premises consisted of exclusively Caucasian individuals.

13. Furthermore, Mr. Doaks was regularly disparately treated by Employer because of his African American race.

14. Employer readily exhibited preferential treatment toward Caucasian employees.

15. Notably, Caucasian employees were allowed more frequent breaks during the workday while the African American employees were not.

16. Furthermore, African American employees were not permitted to utilize paid time off (hereinafter "PTO") during certain weeks because Employer stated they were "too busy," yet management allowed Caucasian employees to utilize their paid time off during those same "prohibited" weeks.

17. On or about August 25, 2020, Mr. Doaks dislocated his shoulder and sought medical attention.

18. Mr. Doak's physician sent him home from the emergency room with a note which stated that Mr. Doaks could return to work with some restrictions.

19. These restrictions included that Mr. Doaks could not lift over ten pounds.

20. On the same date, Mr. Doaks immediately called "Phil", (hereinafter, "Mr. Phil"), the General Manager, notified him of his shoulder dislocation, and requested a reasonable accommodation in the form of light-duty work.

21. Mr. Phil informed Mr. Doaks that he must call his supervisor, "Kenny", (hereinafter, "Mr. Kenny") to inform him of this. Mr. Doaks subsequently called Mr. Kenny and informed him that he was in need of reasonable accommodations in the form of light duty work due to his shoulder dislocation.

22. Mr. Kenny promptly informed Mr. Doaks that he would not be accommodated and that he was not allowed to be put on light duty restrictions for his disability.

23. Upon information and belief, there were numerous workplace duties which Mr. Doaks was capable of completing, even in an accommodated fashion.

24. These workplace duties include working on a different line, checking packaging, or any duty that did not require lifting items.

25. Even so, Mr. Kenny informed Mr. Doaks that he could not return to work until he could perform at full duty with no restrictions and refused to let Mr. Doaks return to the premises.

26. Additionally, Mr. Doaks knew Caucasian coworkers who were permitted to work with light-duty restrictions and received accommodations.

27. On or about September 15, 2020, Mr. Doaks received a phone call from his colleague, "Mike", (hereinafter, "Mr. Mike"), informing Mr. Doaks that he overheard management at Employer state that Mr. Doaks's position was terminated.

28. Mr. Doaks had never received a termination notice and per Employer's orders, was on medical leave until he could return at full duty with no restrictions.

29. Mr. Doaks was perplexed by the information he had received from Mr. Mike, and immediately called his supervisor, Mr. Kenny, to clarify this.

30. Mr. Kenny stated that Mr. Doaks' position was terminated and that he should call Mr. Phil for further details.

31. Mr. Doaks called Mr. Phil at this time. Mr. Phil stated that he was under the impression that Mr. Doaks had voluntarily quit and that he was unaware Mr. Doaks was on medical leave at the time.

32. This was patently false as Mr. Doaks had called and informed Mr. Phil of his injury personally and of his corresponding need for accommodations.

33. Instead of engaging in the accommodations interactive process, Employer told Mr. Doaks he was not allowed to return to the premises until he could return to full duty with no restrictions, and then after less than one month, terminated his employment while he was on medical leave.

34. This termination was carried out prior to Mr. Doaks' final doctor's appointment to be cleared for full duty.

## COUNT I

### RACIAL DISCRIMINATION / WRONGFUL TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

35. Mr. Doaks incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

36. Under Title VII, it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1).

37. When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck*

*& Co.*, 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 36 L. E.D. 29 668 (1973). See also *Makky v. Chertoff*, 542 F.3d 205, 214 (3d Cir. 2008).

38. Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004)).

39. The same legal standards apply to Title VII and PHRA claims. *Connelly v. LaneConstr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 (3d Cir. 2000)). Further, the same standards apply to claims under Title VII and the PHRA on a summary judgment motion. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). Accordingly, the Court's analysis of the Title VII claims also applies to the PHRA claims. *Phillips v. SEPTA*, CIVIL ACTION NO. 16-0986, 6-7 (E.D. Pa. Feb. 12, 2018).

40. Under Title VII, for other employees to be considered "similarly situated," they must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it," *Morales v. PNC Bank, N.A.*, 2012 U.S. Dist. LEXIS 143605 *23 (E.D. Pa. 2012).

41. Pennsylvania courts have held that comparison factors for "similarly situated employees" have included "dealing with the same supervisor, having been subject to the same standards, and engaging in the same conduct without differentiating and mitigating circumstances." *Id*.

42. A plaintiff may also satisfy the fourth element by "showing other circumstances that give rise to an inference of unlawful discrimination." *Senador v. Zober Indus.*, 2009 U.S. Dist. LEXIS 36059 *9 (E.D. Pa. 2009).

43. As an African American, Mr. Doaks is a member of a protected class under Title VII.

44. Mr. Doaks was highly qualified for the position of factory worker at Hershey and never received any negative or less than satisfactory reviews during his employment.

45. Mr. Doaks was regularly disparately treated by Hershey because of his African American race.

46. Employer readily exhibited preferential treatment toward similarly situated Caucasian employees.

47. Caucasian employees were allowed more frequent breaks during the workday while the African American employees were not.

48. Furthermore, African American employees were not permitted to utilize paid time off during certain weeks because Hershey stated they were "too busy," yet management allowed Caucasian employees to utilize their paid time off during those same "prohibited" weeks.

49. On or about August 25, 2020, Mr. Doaks's suffered a dislocated shoulder, of which he notified his General Manager, Mr. Phil, and supervisor, Mr. Kenny, and was directed by his physician to return to work with light duty work restrictions.

50. Mr. Kenny informed Mr. Doaks that he would not be allowed to return to work until he could perform at full duty with no restrictions, despite Mr. Doaks's Caucasian coworkers being permitted to work with light duty accommodations for their injuries.

51. The aforementioned conduct constitutes adverse employment actions taken by Hershey against Mr. Doaks.

52. As a direct and proximate result of the aforementioned conduct, Mr. Doaks suffered actual damages, including, but not limited to, lost wages, emotional distress all in the past present and future.

53. As set forth hereinabove, Hershey's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including, back pay, reinstatement, front pay, compensatory damages, punitive damages, costs and attorney fees, in addition to such other relief as deemed just and proper.

## COUNT II

### RACIAL DISCRIMINATION / WRONGFUL TERMINATION
### IN VIOLATION OF SECTION 1981

54. Mr. Doaks incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

55. 42 U.S.C. § 1981(a) provides that:

> "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws …as is enjoyed by white citizens."

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (holding that Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."); see also, *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 140 S. Ct. 1009, 1010 (2020).

56. Thus, Section 1981 prohibits employers from engaging in intentional racial discrimination.

57. Mr. Doaks was highly qualified for the position of factory worker at Hershey and never received any negative or less than satisfactory reviews during his employment.

58. Mr. Doaks was regularly disparately treated by Hershey because of his African American race.

59. Employer readily exhibited preferential treatment toward similarly situated Caucasian employees.

60. Caucasian employees were allowed more frequent breaks during the workday while the African American employees were not.

61. Furthermore, African American employees were not permitted to utilize paid time off during certain weeks because Hershey stated they were "too busy," yet management allowed Caucasian employees to utilize their paid time off during those same "prohibited" weeks.

62. On or about August 25, 2020, Mr. Doaks's suffered a dislocated shoulder, of which he notified his General Manager, Mr. Phil, and supervisor, Mr. Kenny, and was directed by his physician to return to work with light duty work restrictions.

63. Mr. Kenny informed Mr. Doaks that he would not be allowed to return to work until he could perform at full duty with no restrictions, despite Mr. Doaks's Caucasian coworkers being permitted to work with light duty accommodations for their injuries.

64. The aforementioned conduct constitutes adverse employment actions taken by Hershey against Mr. Doaks.

65. As a direct and proximate result of the aforementioned conduct, Mr. Doaks suffered actual damages, including, but not limited to, lost wages, emotional distress all in the past present and future.

66. As set forth hereinabove, Hershey's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including, back pay, reinstatement, front pay, compensatory damages, punitive damages, costs and attorney fees, in addition to such other relief as deemed just and proper.

### COUNT III

### DISCRIMINATION/ WRONGFUL TERMIANTION IN VIOLATION OF THE ADA

67. Mr. Doaks incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

68. The inquiry into whether a person is disabled under the ADA is made on a case-by case analysis. *Tice v. Centre Area Transport Authority*, 247 F.3d 506 (3rd Cir. 2001). To establish a prima facie case of discrimination under the ADA, Plaintiff must show: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations by the employer; and (3) he suffered an otherwise adverse employment decision as a result of discrimination. See *McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at *2 (3d Cir. May 14, 2018) (citing *Gaul v. Lucent Techs., Inc*., 134 F.3d 576, 580 (3d Cir. 1998)).

69. Mr. Doaks is disabled within the meaning of the ADA.

70. Mr. Doaks was highly qualified for the position of factory worker at Hershey and never received any negative or less than satisfactory reviews during his employment.

71. On or about August 25, 2020, Mr. Doaks's suffered a dislocated shoulder, of which he notified his General Manager, Mr. Phil, and supervisor, Mr. Kenny, and was directed by his physician to return to work with light duty work restrictions.

72. Mr. Kenny informed Mr. Doaks that he would not be allowed to return to work until he could perform at full duty with no restrictions.

73. On or about September 15, 2020, Mr. Doaks was informed by Mr. Mike that he had overheard management saying that Mr. Doaks's had been terminated.

74. Perplexed by this information, Mr. Doaks called Mr. Kenny, who informed him that he was terminated and should call Mr. Phil for clarification.

75. Mr. Phil told Mr. Doaks that he was under the impression that Mr. Doaks had voluntarily quit and was unaware he was on medical leave at the time.

76. This was patently false as Mr. Doaks had called and informed Mr. Phil of his injury personally and of his corresponding need for accommodations. Instead of engaging in the accommodations interactive process, Mr. Kenny told Mr. Doaks he was not allowed to return to the premises until he could return to full duty with no restrictions, and then after less than one month, terminated his employment while he was on medical leave.

77. This termination was carried out prior to Mr. Doaks's final doctor's appointment to be cleared for full duty.

78. Mr. Doaks suffered an adverse employment decision in the form of the termination of his employment as a result of Hershey's discrimination specifically related to Mr. Doaks's disability.

79. As a direct and proximate cause of the aforementioned conduct, Mr. Doaks suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

80. As set forth hereinabove, Hershey's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including, back pay, reinstatement, front pay, compensatory damages, punitive damages, costs and attorney fees, in addition to such other relief as deemed just and proper.

## COUNT IV

### FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

81. Mr. Doaks incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

82. To prevail on a claim of failure to accommodate, Plaintiff must establish that "(1) the employer knew about his disability; (2) he requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist him in seeking accommodations; and (4) he could have been reasonably accommodated but for the employer's lack of good faith." *Tourtellotte v. Eli Lily & Co.*, 636 F.App'x 831, 849 (3d Cir. 2016) (internal citations omitted).

83. Mr. Doaks made Hershey aware of his condition at the time he received the note from his physician and therefore Hershey possessed knowledge of Mr. Doaks's disability.

84. Mr. Doaks requested reasonable accommodations in the form of being allowed to complete his workplace duties while temporarily not lifting over ten pounds.

85. In lieu of making reasonable accommodations for Mr. Doak's disability, Hershey terminated his employment.

86. Therefore, Hershey failed to make a good faith effort to assist Mr. Doaks in seeking reasonable accommodations.

87. Hershey refused to offer any further assistance in the accommodations process.

88. Mr. Doaks could have been readily and reasonably accommodated by Hershey during his light duty requirements, however, Hershey failed to provide even a modicum of good faith or a willingness to engage in the accommodations process.

89. Upon information and belief, Hershey had other employees who were accommodated for light duty restrictions.

90. As a direct and proximate cause of the aforementioned conduct, Mr. Doaks suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

91. As set forth hereinabove, Hershey's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including, back pay, reinstatement, front pay, compensatory damages, punitive damages, costs and attorney fees, in addition to such other relief as deemed just and proper.

**JURY TRIAL DEMANDED.**

                Respectfully submitted,

                **J.P. WARD & ASSOCIATES, LLC,**

Date: April 26, 2022          By: _/s/ Joshua P. Ward_____
                    Joshua P. Ward (Pa. I.D. No. 320347)
                    Travis A. Gordon (Pa. I.D. No. 328314)

                    J.P. Ward & Associates, LLC
                    The Rubicon Building
                    201 South Highland Avenue
                    Suite 201
                    Pittsburgh, PA 15206

                    Counsel for Plaintiff